## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TIFFANY LESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 3:23-cv-00138 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| BURT'S BEES INC. | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.     NATURE OF THE ACTION ................................................................................ 1

II.    THE PARTIES ..................................................................................................... 2

III.   JURISDICTION AND VENUE .......................................................................... 3

IV.    FACTUAL ALLEGATIONS .............................................................................. 3

       Background on activated charcoal in dentifrices. ............................................... 3

       Burt's Bees' charcoal toothpaste products........................................................... 4

       The Class Products lack the ADA Seal of Acceptance........................................ 7

       Scientific studies and literature show the ineffectiveness and potential to cause harm of
       charcoal dentifrices. .......................................................................................... 10

       Based on the opinions of experts in the field, health-based websites agree that charcoal
       toothpastes are ineffective at whitening and that they pose health risks. ......... 18

       Burt's Bees knew and/or should have known of the scientific literature and evidence
       showing that charcoal toothpaste is ineffective and potentially harmful to teeth............ 22

       Burt's Bee's omitted material information and intended to mislead consumers. ............. 23

       Burt's Bees' acts violate established ethical standards........................................ 24

       Plaintiff's Purchases........................................................................................... 25

V.     CLASS ALLEGATIONS .................................................................................. 26

COUNT I .................................................................................................................. 29

COUNT II ................................................................................................................. 33

COUNT III................................................................................................................ 35

COUNT IV................................................................................................................ 38

VI.    PRAYER FOR RELIEF .................................................................................... 39

VII.   JURY DEMAND ............................................................................................... 39

Plaintiff Tiffany Lester ("Plaintiff"), by and through the undersigned counsel and on behalf of herself and all others similarly situated, files this Amended Complaint against Defendant Burt's Bees, Inc. ("Burt's Bees" or "Defendant") based on personal knowledge as to her own actions and on information and belief, based on the investigation of counsel, as to Burt's Bees conduct and practices.

## I.   NATURE OF THE ACTION

1.   Burt's Bees manufactures, distributes, and markets charcoal toothpaste products, which it markets as natural, safe, and effective whitening toothpastes.

2.   Contrary to how Burt's Bees markets its charcoal toothpastes, scientific studies and expert commentary addressed herein show that not only are charcoal toothpastes ineffective at whitening teeth, but they are overly abrasive and damaging to the teeth's enamel.

3.   Through its sale and marketing of its charcoal toothpaste products, Burt's Bees misrepresents and omits material facts and engages in unfair practices relating to the safety and efficacy of the products.

4.   In fact, because Burt's Bees' charcoal toothpaste products lack the American Dental Association's ("ADA") Seal of Acceptance, as set forth herein, buying its charcoal toothpaste products goes against the ADA's recommendations.

5.   In selling and marketing its charcoal toothpaste products, Burt's Bees is capitalizing on the broader recent trend – boosted through social media – of the use of activated charcoal in various food and beauty products, including toothpastes.[1]

---

[1] *See* "Why the charcoal toothpaste trend needs to die," available at https://www.salon.com/2020/02/09/why-the-charcoal-toothpaste-trend-needs-to-die/ (accessed 5/20/2022); "What Dentists Want You to Know About Those Charcoal Toothpastes That Promise Whiter Teeth," available at https://www.popsugar.com/fitness/Charcoal-Toothpaste-Safe-45867054 (accessed 5/20/2022).

6.  But as ADA spokesperson Ada Cooper, DDS, stated in regard to charcoal toothpastes: "Just because something is popular doesn't mean it's safe."[2]

7.  Relevant studies show that not only are charcoal toothpastes ineffective at whitening teeth, but they have harmful effects on teeth that do not arise from the use of ADA approved whitening toothpastes.

8.  As a result of Burt's Bees' misrepresentations and omissions regarding the safety and efficacy of its charcoal toothpastes, Burt's Bees has been able to sell the products to more consumers and for more money than it otherwise would have had it been truthful and forthcoming about the products.

9.  Plaintiff Tiffany Lester was deceived by Burt's Bees' misrepresentations and omissions, and, as a result, purchased Burt's Bees' charcoal toothpaste products. Accordingly, she brings this action on behalf of herself and other similarly situated consumers to recover damages caused by Burt's Bees' unlawful practices.

## II.  THE PARTIES

10. Plaintiff Tiffany Lester is a citizen of Madison County, Illinois.

11. Defendant Burt's Bees, Inc., is a corporation incorporated in Delaware with its principal place of business at 210 W. Pettigrew St., Raleigh-Durham, NC 27701. Burt's Bees manufactures, markets and sells, and/or did so during the Class Period, the Burt's Bees Charcoal + Whitening Zen Peppermint Toothpaste Fluoride-Free ("Burt's Bees' Fluoride-Free Charcoal Toothpaste") and the Charcoal + Whitening Mountain Mint Toothpaste With Fluoride ("Burt's Bees' Fluoride Charcoal Toothpaste"), collectively referred to herein as the "Class Products."

---

[2] "What Dentists Want You to Know About Those Charcoal Toothpastes That Promise Whiter Teeth," available at https://www.popsugar.com/fitness/Charcoal-Toothpaste-Safe-45867054 (accessed 5/20/2022).

### III. JURISDICTION AND VENUE

12. This Court has personal jurisdiction over Burt's Bees because Burt's Bees is authorized to conduct and does conduct business in Illinois. Burt's Bees has marketed, promoted, distributed, and sold the Class Products in Illinois, has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through its promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible, and the claims of Plaintiff and the Illinois consumers she seeks to represent arise out of, derive from, and are otherwise connected with Burt's Bees' conduct in Illinois.

13. Venue is proper in this Court because Burt's Bees is doing business in and, therefore, is a resident of, Madison County, Illinois and Madison County, Illinois is the county in which the transaction or some part thereof occurred out of which the cause of action arises.

### IV. FACTUAL ALLEGATIONS

**Background on activated charcoal in dentifrices.[3]**

14. Although the use of charcoal for oral hygiene purposes is not new – in fact, as noted in the article "Charcoal-containing dentifrices,"[4] its use dates back to ancient Greece – charcoal toothpastes have recently grown in popularity. As stated by the authors of "Charcoal-containing dentifrices," published in the peer-reviewed British Dental Journal, "[c]harcoal dentifrices are increasingly fashionable oral hygiene products, intended for toothbrushing, extrinsic stain removal and 'tooth whitening.'" *Id.*

15. The authors explain that "[t]he charcoal in charcoal toothpastes marketed today is typically a fine powder form of activated charcoal, which has been oxidized by controlled reheating or chemical means." *Id.*

---

[3] "Dentifrice" means "a powder, paste, or liquid for cleaning the teeth." *See* Dentifrice Definition & Meaning - Merriam-Webster.
[4] Linda H. Greenwall *et al.*, Charcoal-containing dentifrices, 226 British Dental Journal 697 (2019).

16.  The "charcoal may be made from a range of carbon-rich materials, including nutshells, coconut husks, bamboo and peat, if not wood or coal." *Id.*

17. Similarly, in the article "Effects of charcoal-based whitening toothpastes on human enamel in terms of color, surface roughness, and microhardness: an in vitro study,"[5] published in the peer-reviewed journal Clinical Oral Investigations, the authors state that the charcoal "is obtained through a method called 'slow pyrolysis', by disposing of water and other volatile components from carbon-rich materials. In this method, substances such as nutshells, coconut husks, or peat are heated in oxygen-free medium."

**Burt's Bees' charcoal toothpaste products.**

18. As set forth above, Burt's Bees sells – and during the Class period sold – two separate charcoal whitening toothpaste products, Burt's Bees' Fluoride-Free Charcoal Toothpaste and Burt's Bees' Fluoride Charcoal Toothpaste (the "Class Products").

19. Screenshots of relevant portions of the box for Burt's Bees' Fluoride-Free Charcoal Toothpaste are shown below:

_____

[5] Uzay Koc Vural, *Effects of charcoal-based whitening toothpastes on human enamel in terms of color, surface roughness, and microhardness: an in vitro study*, 25 Clinical Oral Investigations 5977 (2021).







As can be seen, the box advertises "Charcoal + Whitening" and states, "This toothpaste, crafted with charcoal, removes surface stains to help restore teeth to their natural whiteness . . . ."

20. Screenshots of relevant portions of the box for Burt's Bees' Fluoride Charcoal Toothpaste are shown below:

  

As can be seen, this box also advertises "Charcoal + whitening" and states, "This toothpaste, crafted with charcoal, removes surface stains to help restore teeth to their natural whiteness . . . ."

21. Accordingly, Burt's Bees represents that the Charcoal in its toothpastes whitens teeth. The boxes do not represent that any other ingredient in Burt's Bees toothpastes contributes to teeth whitening. Burt's Bees also plays up their Charcoal ingredients and the "natural" aspects,

suggesting that the products are particularly health-and safety-oriented. *See* statement on the boxes that Class Products are "Made without Parabens, SLS, and Artificial Flavors." Parabens "are a family of related chemicals that are commonly used as preservatives in cosmetic products."[6] SLS refers to "sodium lauryl sulfate," or "an ingredient widely used as a surfactant in toothpaste, which means it reduces surface tension to help clean your teeth."[7]

22. The side of the boxes further portray the Class Products as being particularly safe and healthy, by stating: "We Don't Add What You Don't Want," and that they are made without things such as SLS, "Artificial Flavors & Sweeteners," and "Preservatives & Blue, Red, Yellow Dyes."

23. Thus, reasonable consumers would understand the Class Products to be natural, safe, and effective whitening toothpaste products due to their Charcoal.

**The Class Products lack the ADA Seal of Acceptance.**

24. Buying the Class Products is contrary to the ADA's recommendation.

25. According to the ADA's website: "For more than 125 years, the ADA has promoted safety and efficacy of dental products."[8]

26. The ADA offers an "ADA Seal of Acceptance" which "has been the leading mark of dental product safety and efficacy for 90 years."[9]

27. The ADA states that the "Seal is awarded by the ADA's Council on Scientific Affairs and supported by a team of leading scientists in fields like microbiology, pharmacology, toxicology, and chemistry."[10] Moreover: "Validation by these independent experts is what has made the ADA Seal the most trusted mark in oral hygiene since 1931." *Id.*

---

[6] Parabens in Cosmetics | FDA (accessed 5/20/2022).
[7] SLS Toothpaste and Sensitive Teeth | Sensodyne (accessed 5/20/2022).
[8] ADA Seal FAQ | American Dental Association (accessed 5/25/2022).
[9] ADA Seal of Acceptance | American Dental Association (accessed 5/25/2022).
[10] *Id.*

28. The ADA calls its Seal of Acceptance the "gold standard for dentists and consumers." *Id.*

29. The ADA states that "more than 200 over-the-counter dental products sold to consumers carry the ADA Seal of Acceptance. Participating companies commit significant resources to test and market products in the Seal program. These products can be used with assurance that they have demonstrated safety and efficacy according to ADA requirements."[11]

30. The ADA adds that a "product submission must include data from clinical and/or laboratory studies that demonstrate safety and efficacy according to product category requirements developed by the ADA Council on Scientific Affairs." *Id.* Then, "[i]f all requirements are met, the ADA Seal is awarded for a five-year period." *Id.*

31. Before awarding the seal, "[m]embers of the ADA's Council on Scientific Affairs review submissions for adherence to product category requirements. When necessary, the Council utilizes consultants with specific area expertise. The consultants represent all fields relevant to evaluating dental products, including dental materials, microbiology, pharmacology, toxicology and chemistry. Only after a product has demonstrated its safety and efficacy will the ADA Council on Scientific Affairs award the Seal." *Id.*

32. Accordingly, the Seal of Acceptance "is designed to help dental professionals make informed recommendations concerning safety and efficacy of consumer products." *Id.*

33. The ADA makes clear that it recommends that consumers buy only dental care products with the Seal of Acceptance. On its "Mouth Healthy" website, the ADA states: "There are so many dental care products on the store shelves, how do you decide what's best for you and your family? *Start with the ADA Seal of Acceptance*." (emphasis added).[12]

---

[11] ADA Seal FAQ | American Dental Association (accessed 5/25/2022).
[12] About the ADA Seal of Acceptance - American Dental Association (mouthhealthy.org) (accessed 5/25/2022).

34. Additionally, in a webpage about teeth whitening on its "Mouth Healthy" website, the ADA states in regard to stain removal toothpastes: "All toothpastes help remove surface stain through the action of mild abrasives that scrub the teeth. *Look for whitening toothpastes that have earned the ADA Seal of Acceptance* for stain removal (it will tell you on the package). These toothpastes have additional polishing agents that are safe for your teeth and provide stain removal effectiveness." (emphasis added).[13]

35. Furthermore, in addressing dental products with charcoal, the ADA states: "There is no evidence that shows dental products with charcoal are safe or effective for your teeth"[14] It states: "Instead, *choose a whitening toothpaste with the ADA Seal of Acceptance*. The Seal lets you know the toothpaste you choose is safe, effective, and won't damage your teeth." (emphasis added).[15]

36. The Class Products do not have the ADA Seal of Acceptance, as can be seen by searching the ADA's "Accepted Products."[16]

37. In fact, "[t]here is no charcoal toothpaste with the ADA Seal of Acceptance."[17]

38. Accordingly, it goes against the ADA's recommendation for a consumer to purchase one of the Class Products.

39. On information and belief, Burt's Bees is fully aware of the significance of the ADA Seal of Acceptance in demonstrating a toothpaste's safety and effectiveness. That information and belief is based on the fact that Burt's Bees markets and sells non-charcoal toothpastes with the

---

[13] Tooth Whitening - From MouthHealthy.org (accessed 5/25/2022).
[14] Citing John K. Brooks, DDS, et al., Charcoal and charcoal-based dentrifices: A literature review, 148 JADA 661 (2017).
[15] Does Natural Teeth Whitening Work? - American Dental Association (mouthhealthy.org) (accessed 5/25/2022).
[16] Product Search | American Dental Association (ada.org) (accessed 5/25/2022).
[17] 6 best whitening toothpastes in 2022 that are ADA-accepted (nbcnews.com) (accessed 5/25/2022).

ADA Seal of Acceptance, specifically its Deep Clean + Whitening Fluoride Toothpaste[18] and its Burt's Bees for Kids Fluoride Toothpaste.[19] But not its charcoal toothpastes.

**Scientific studies and literature show the ineffectiveness and potential to cause harm of charcoal dentifrices.**

40. The peer-reviewed scientific literature on charcoal toothpaste, written by authors from around the world, tells a much different story than what Burt's Bees portrays to consumers. It demonstrates that charcoal toothpaste does not effectively whiten teeth and that it has the potential to cause harm. In chronological order, pertinent studies in the past six years include the following studies, which include review studies that examined many other studies):

**Brooks *et al.* (2017).**

41. In "Charcoal and charcoal-based dentifrices: A literature review," published in the peer-reviewed Journal of the American Dental Association in 2017, John K. Brooks and others from the School of Dentistry of the University of Maryland reviewed the then-existing literature on charcoal and charcoal-based toothpastes, specifically 118 studies.[20] The purpose of the review was "to examine the efficacy and safety of charcoal and charcoal-based dentifrices." They stated that "[c]harcoal has been recognized as an abrasive mineral to the teeth and gingiva, and its inclusion in tooth preparations raises concern about damage to these oral structures, as well as increasing caries susceptibility due to the potential loss of enamel." *Id.* at 669. Caries is "tooth decay, commonly called cavities."[21]

---

[18] Burt's Bees Whitening Toothpaste | American Dental Association (ada.org) (accessed 5/25/2022).
[19] Burt's Bees for Kids Fluoride Toothpaste | American Dental Association (ada.org) (accessed 5/25/2022).
[20] John K. Brooks, DDS, et al., *Charcoal and charcoal-based dentifrices: A literature review*, 148 JADA 661 (2017).
[21] Merck Manual Professional Edition, available at https://www.merckmanuals.com/professional/dental-disorders/common-dental-disorders/caries (accessed 7/7/2022). *See also infra* at 12, n. 25.

42. From their literature review they "found insufficient scientific evidence to substantiate

the cosmetic, health benefits (antibacterial, antifungal, or antiviral; reduced caries; tooth

whitening; oral detoxification), or safety claims of marketed charcoal-based dentifrices." *Id.*

43. The authors stated that "dental practitioners are urged to educate their patients about the

unproven claims of oral benefits and possible health risks associated with the use of charcoal

dentifrices and the potential increased risk of developing caries with use of these nonfluoridated

or possibly charcoal-inactivated fluoride products." *Id.*

44. The "[p]ractical implications" of their study is that "[d]ental clinicians should advise their

patients to be cautious when using charcoal and charcoal-based dentifrices with unproven claims

of efficacy and safety." Because patients would have no way of knowing on their own whether

charcoal toothpastes were effective and safe, this advice amounts to telling patients not to use

charcoal toothpastes.[22]

**Pertiwi *et al.* (2017)**

45. U.I. Pertiwi *et al.* "Surface changes of enamel after brushing with charcoal toothpaste,"[23]

published in 2017 by authors from the Faculty of Dentistry of Universitas Indonesia in Jakarta

and published in the peer-reviewed Journal of Physics: Conference Series, found studied

brushing with charcoal toothpaste and found increased surface roughness of tooth enamel. The

authors concluded that "there were increasing surface roughness values of tooth surfaces after

the use of toothpaste containing charcoal, and the increased surface roughness was statistically

significant" after brushing for the equivalent of one month and three months.

---

[22] Dr. Brooks followed up his study with a letter to the editor of the Journal of the American Dental Association
pointing out that, since publishing the article, he had found two JADA papers from the 1930's and 1940's finding
charcoal toothpastes unacceptable. John K. Brooks et al., More on Charcoal and Charcoal-Based Dentifrices, 148
JADA 785 (2017).
[23] U. I. Pertiwi *et al.*, *Surface changes of enamel after brushing with charcoal Toothpaste*, IOP Conf. Series: Journal
of Physics: Conf. Series 884 (2017).

46. The authors explained that "[w]hen the process of abrasion occurred, abrasive materials contained in toothpaste would cause scratches in the enamel surface and cause the loss of some minerals in the enamel surface. The loss of tooth minerals would lead to an increase in the value of Ra [surface roughness]." *Id.* at 7. Compared to the non-charcoal toothpaste, the charcoal toothpaste showed "significantly different Ra value changes after brushing for the equivalent of three months. This indicates that the charcoal allegedly played a role in the change of surface roughness of tooth enamel." *Id.* at 8.

47. The authors explained why that was important: "A tooth's rough enamel would be a strategic place for bacteria to adhere to the tooth's surface" and that the "presence of bacteria in the oral cavity is one of the causes of high caries[24] and periodontal disease risk." *Id.* at 8. Based on the threshold value for surface roughness that might cause the retention of bacteria, the charcoal toothpaste in the study "crossed the threshold of bacterial retention" after brushing for the equivalent of three months. *Id.*

**Greenwall *et al.* (2019)**

48. Greenwall *et al.*, "Charcoal-containing dentifrices," written by authors from the University of Manchester Dental School, King's College London and a specialty private practice in London and published in 2018 in the peer-reviewed British Dental Journal,[25] "provide[d] an overview of the current knowledge and understanding of charcoal toothpastes and powders, including consideration of the strength of the evidence to support claims made by the manufacturers of these products." *Id.* at 697. The paper's "Key points" include that "the claimed benefits of charcoal dentifrices are outweighed by the anticipated adverse affects." *Id.*

---

[24] The authors state: "Dental caries is a pathologic process of tooth tissue damage caused by microorganisms. Caries is a multifactorial disease that involves four fundamental factors: the host, who consists of dental tissues and saliva; the agent, which is microflora; the environment or substrate; and time. Caries is also defined as the progressive demineralization of the hard tissue of the tooth surface by organic acids from food." *Id.* at 1.
[25] Linda H. Greenwall *et al.*, Charcoal-containing dentifrices, 226 British Dental Journal 697 (2019).

49. The authors reiterated the findings of Brooks *et al.* (2017):

> The literature review by Brooks et al., published in 2017, which considered 118 articles and includes a database on 50 charcoal-based toothpastes, found "insufficient scientific evidence to substantiate the cosmetic, health benefits (antibacterial, antifungal, or antiviral; reduced caries; tooth whitening; oral detoxification), or safety claims of marketed charcoal-based dentifrices."

*Id.* at 698.

50. The authors noted that "with many of the claims made for charcoal-based toothpastes and powders, there is a paucity of supporting scientific data," and they "suggested that the claims made by manufacturers of charcoal-based dentifrices should be limited to those which are supported by robust, high-quality, independent scientific evidence; thereby limiting the risk of misleading the public." *Id.* at 698.

51. The authors concluded that "[c]harcoal-based dentifrices, in the absence of supporting scientific evidence, may be considered to be a fashionable, marketing 'gimmick' based on folklore on the use of different forms of charcoal for oral and dental remedies, or present day uses of charcoal for medical purposes."

**Panariello *et al.* (2020).**

52. A study by authors from the Indiana University School of Dentistry, published in the peer-reviewed American Journal of Dentistry, looked at the effect on caries formation of fluoride and non-fluoride charcoal toothpastes and fluoride and non-fluoride regular toothpastes.[26]

53. The authors found that "[t]he tested charcoal dentifrices did not exhibit anticaries potential." In other words, charcoal toothpaste, even when containing fluoride, does not prevent cavities.

---

[26] Beatriz Hd Panariello et al., *The effects of charcoal dentifrices on Streptococcus mutans biofilm development and enamel demineralization,* 33 Am. J. Dent. 12 (2020).

**Da Silva *et al.* (2021).**

54. This article, by scientists from the School of Dentistry of the University of Birmingham
in England and the Universidade Federal de Campina Grand in Brazil, published in the British
Dental Journal, [27] discusses the problem of "fake news" in dentistry.

55. One example of "fake news" relates to charcoal toothpaste, which they state is a fad,
backed by "poorly supported scientific information":

> There has been a rapid growth of dental health "fads" such as the use of charcoal
> toothpaste or other seemingly healthy products to improve the strength of teeth.
> The latter products are often recommended without the use of fluoride, which is
> wrongly considered a "poison." These products are promoted incessantly over a
> wide range of social media channels, which in turn promotes a sense of authority
> about them. While there is a lack of poorly scientifically supported information
> around such items, it this [*sic*] does not stop them from being used.

*Id.* at 398.

56. They go on to state: "Recently, recognised brands have started to sell charcoal toothpaste
adding fluoride to the list of ingredients. Such commercial companies are capitalising on the
popularity that began with little or no scientific support. The problem is that someone stands to
benefit from the spread of fake news." *Id.* at 398.

**Koc Vural *et al.* (2021).**

57. Authors from a university and dental school in Ankara, Turkey, reported in 2021 in the
peer-reviewed scientific journal Clinical Oral Investigations that charcoal-based whitening
toothpastes did not show "clinically acceptable whitening performances" and that their "effects
on enamel abrasion should not be disregarded" due to increased surface tooth roughness from

---

[27] Marco Antonio Dias da Silva and Anthony Damien Walmsley, *Fake news and dental education*, 226 British
Dental J. 397 (2019).

their use. Uzay Koc Vural *et al.*, "Effects of charcoal-based whitening toothpastes on human enamel in terms of color, surface roughness, and microhardness: an in vitro study."[28]

58. The authors' first null hypothesis was "that charcoal based whitening toothpastes (1) would not lead to tooth whitening and there would be no significant difference among the tested charcoal containing toothpastes in terms of tooth whitening . . . ." *Id.* at 5978.[29] They proved that null hypothesis: "All toothpastes tested did not show significant whitening performances with no difference among the groups after 12-week brushing. Tested charcoal-based whitening toothpastes as well as regular fluoridated toothpaste presented unacceptable whitening performance . . . ." *Id.* at 5981.

59. Their second null hypothesis was that the charcoal toothpastes "would not have an effect on the surface roughness . . . ." *Id.* at 5978. Their results partially refuted that hypothesis because "charcoal containing toothpastes increased the surface roughness except BW after 12-week brushing." *Id.* at 5982. BW, or "Black is White," refers to one of the charcoal toothpastes tested. The authors explained that the "reason why there was no change in BW toothpaste may be originated from its abrasive content as this toothpaste has 'low abrasive' ingredient."

60. The authors explained that surface roughness is of "vital importance" because "[a]s surface roughness has a bulk impact on the adhesion of bacteria, it may increase the biofilm formation/accumulation, thus cause irreversible damage of tooth hard tissues and restoration surfaces." *Id.* at 5982. They added that "[s]urface roughness can also result in recession of the

_____

[28] Uzay Koc Vural, *Effects of charcoal-based whitening toothpastes on human enamel in terms of color, surface roughness, and microhardness: an in vitro study*, 25 Clinical Oral Investigations 5977, 5983, 5977 (2021).

[29] A "null hypothesis" is a hypothesis that the relationship that investigators are studying (*e.g.*, as in the Koc Vural (2021) study, a relationship between brushing with charcoal toothpaste and whitened teeth) *does not exist*. That's why it's called "null." In performing their study, investigators seek to *disprove* the null hypothesis. If they do, they have shown that the relationship they are investigating *exists*—to use the above example, that charcoal toothpaste whitened teeth. *See* "Null and Alternative Hypotheses" in Barbara Illowsky and Susan Dean, *Introductory Statistics* (2019), available at https://opentextbc.ca/introstatopenstax/chapter/null-and-alternative-hypotheses/; *Biology* online, https://www.biologyonline.com/dictionary/null-hypothesis (both accessed 7/7/2022).

gingiva, dentin hypersensitivity, accumulation of oral pigments, which may intervene in the optical appearance of enamel and restoration margins." *Id.* at 5985.

**Bauler *et al.* (2021).**

61. A peer-reviewed study by scientists from the School of Dentistry – Universidade Federal de Pelotas in Brazil that included a review of 22 studies of charcoal or charcoal toothpastes found that the weight of the evidence indicated that charcoal toothpaste was ineffective at whitening and had adverse effects on tooth surfaces.[30]

62. Of the 22 studies, only five reported positive results for charcoal products, while five reported similar results compared to controls, and 12 reported negative results, including no whitening, increased roughness, surface wear, reduced bonding ability, and lower demineralization prevention ability. *Id.*at 85.

63. The authors criticized one of the positive studies, a clinical study that "was sponsored by the manufacturer of the product, had a short term follow up (8 weeks), and reported positive results, but no control group was present." *Id.*

64. The authors concluded that "[t]he scientific literature reviewed indicated few beneficial health effects by charcoal-based products, whereas articles reported adverse effects on tooth surfaces and restorative materials." *Id.* at 86

**De Lima *et al.* (2022)**

65. In a peer-reviewed study on whitening toothpastes, authors from the University of Sao Paolo School of Dentistry and the University of Bern found that 10 "whitening toothpastes," including one with charcoal, did not promote whitening.[31]

---

[30] Laura D. Bauler *et al.*, Charcoal-based dentifrices and powders: analyses of product labels, Instagram engagement, and altmetrics, 32 Brazilian Dental Journal 80 (2021).
[31] Leonardo Custódio de Lima *et al.*, *Impact of desensitizing/whitening toothpastes on tooth color change after abrasion and erosion-abrasion*, J. Esthet. Restor. Dent. 1 (March 2022).

66. The authors concluded: "The toothpastes did neither promote whitening nor avoid the yellowish aspect of the tooth after abrasion and erosion-abrasion, regardless of their claim." *Id.* at 1.

67. The authors reported that their study had the following clinical significance: "Desensitizing and/or whitening toothpastes induced similar changes on tooth color, without promoting whitening effect or reduction in its yellowish aspect." *Id.*

**Rashid *et al.* (2022)**

68. A study published in the peer-reviewed American Journal of Dentistry by authors from the Missouri School of Dentistry & Oral Health, the University of New England and East Carolina University compared the whitening efficacy of charcoal to a non-charcoal containing whitening toothpaste on 60 extracted human teeth. The authors concluded: "The Premium Nature charcoal toothpaste tested had no tooth whitening effect."[32]

**Tomas *et al.* (2023)**

69. Just this year, authors from the University of Murcia in Murcia, Spain, published in a special edition of the peer-reviewed Annals of Anatomy a review of the literature on the effectiveness and abrasiveness of activated charcoal as a whitening agent.[33] They found 11 full studies that met their inclusion criteria (*e.g.*, using the term "activated charcoal" or the like) and were not excluded because they were literature reviews or not performed on extracted teeth.

70. After reviewing the studies, they concluded that "[c]ompared to other whitening toothpastes, the whitening effect of activated charcoal is less effective than that of other toothpastes containing whitening agents such as hydrogen peroxide or carbamide." They also

---

[32] Shashist Rashid *et al.*, *Impact of brushing with charcoal on tooth color and enamel loss: An in vitro study*, 35 Am. J. Dent. 133 (2022); abstract available at https://pubmed.ncbi.nlm.nih.gov/35798707/#affiliation-1 (accessed 4/12/2023).
[33] Dolores Bibiana Montero Tomás *et al.*, *Effectiveness and abrasiveness of activated charcoal as a whitening agent: A systematic review of in vitro studies*, 245 Annals of Anatomy 245 (2023).

concluded that because of their high abrasive potential, "activated charcoal-based toothpaste is less safe than other whitening pastes with a much lower abrasive potential."

**Based on the opinions of experts in the field, health-based websites agree that charcoal toothpastes are ineffective at whitening and that they pose health risks.**

71. The findings of the above scientific studies have been echoed in health-oriented web sites, which warn against the use of charcoal toothpastes based on advice of experts in the field. Notably, these experts refer to charcoal toothpastes generally, not to particular brands. In chronological order, such reports include the following:

### Prevention, "Is Charcoal Toothpaste the Answer to Whiter Teeth?"

72. On September 26, 2018, Prevention published an article entitled "Is Charcoal the Answer to Whiter Teeth." [34] Linking to Brooks *et al.* (2017), the article stated, "In fact, the American Dental Association (ADA) reviewed all the research on brushing with charcoal toothpaste (and charcoal powder), and according to their findings in the Journal of the American Dental Association, there isn't enough evidence to back up charcoal's so-called teeth-beautifying benefits."

73. The article also quoted Dr. Kenneth Magid, DDS, adjunct clinical associate professor at NYU College of Dentistry, who said that because of their lack of approval by the ADA, "many of the [charcoal toothpaste] products may be too abrasive for regular use and can possibly remove the enamel outside of the teeth or damage porcelain restorations such as veneers or crowns." *Id*. According to Dr. Magid, when the enamel wears away it can make teeth duller and darker "due to the underlying dentin showing through." Beyond darkening teeth, worn down enamel makes teeth more sensitive to temperature and susceptible to cavities. *Id*.

---

[34] Macaela Mackenzie, "Is Charcoal Toothpaste the Answer to Whiter Teeth? Dentists explain the science behind this tooth trend," Prevention (Sept. 26, 2018),  Charcoal Toothpaste: Does It Work and Is It Safe? Dentists Explain (prevention.com) (accessed 6/1/2022).

74. Dr. Magid further stated: "Not only do charcoal toothpastes not meet the criteria that I would use to recommend them, but they may be too abrasive and damaging to teeth." *Id.*

### Healthline, "Does Activated Charcoal Teeth Whitening Work?"

75. In an article medically reviewed by Christine Frank, D.D.S., dated December 4, 2018, "Does Activated Charcoal Teeth Whitening Work?," the health website Healthline analyzed the evidence regarding charcoal toothpastes and provided this "Takeaway": "Activated charcoal has some proven uses, but teeth whitening isn't one of them. Instead, look for products that have the ADA Seal of Acceptance."[35]

### Tufts Now, "Charcoal and White Teeth"

76. An article dated January 7, 2019, on the Tufts University website,[36] pointed out that charcoal is "not among the small number of whitening products that have received the American Dental Association Seal of Acceptance, given after scientific evaluations for safety and effectiveness."

77. The article also quoted Dr. Aikaterini Papathanasiou, director of the Advanced Education in Esthetic and Operative Dentistry program at the Tufts School of Dental Medicine, who stated many charcoal toothpaste products "are overly abrasive and can take away the outer layer of your tooth called the enamel." She added "[t]hat abrasion could create sensitivity, expose the darker dentin underneath, and create a rough tooth surface that can absorb more stains – the exact opposite of what you're trying to do."

78. Dr. Papathanasiou further stated that "[t]here is currently no scientific evidence that shows these products are safe or effective for your teeth."

---

[35] "Does Activated Charcoal Teeth Whitening Work," https://www.healthline.com/health/activated-charcoal-teeth-whitening#summary (accessed 6/24/2022). In a note on Sources, this article states that Healthline "relies on peer-reviewed studies, academic research institutions, and medical associations."

[36] Alyssa diLeo, "Charcoal and White Teeth," Tufts Now (Jan. 7, 2019), Charcoal and White Teeth | Tufts Now (accessed 6/1/2022).

79. Asked what she suggests to keep teeth healthy and bright she gave several pieces of advice. Her only one related to toothpaste was this: "Use an ADA-approved fluoride-based whitening toothpaste to remove superficial stains." As noted, the class products are not ADA-approved.

### Pop Sugar Fitness, "What Dentists Want You To Know About Those Charcoal Toothpastes that Promise Whiter Teeth"

80. On March 7, 2019, the website Pop Sugar Fitness published an article based on an interview with ADA spokesperson Ada Cooper, who warned consumers about the hazards of charcoal toothpastes.[37]

81. Dr. Cooper stated, "Charcoal is recognized as an abrasive mineral to teeth and gums" and "Using materials that are too abrasive can actually make your teeth look more yellow, because it can wear away the tooth's enamel and expose the softer, yellower layer called dentin."

### Salon, "Why the charcoal toothpaste trend needs to die"

82. On February 9, 2020, Salon published an article titled, "Why the charcoal trend needs to die."[38] This article quoted two experts debunking the benefits of charcoal toothpastes.

83. Dr. Sargon Lazarof, "a cosmetic dentist and the founder of the Sargon Dental & Implant Institute in Encino, Calif.," stated, "The dark charcoal can get stuck in small nooks and crannies of teeth and fillings and making them unsightly. Also, if charcoal is stuck under the gums, it could be harmful."

84. Dr. Rick Mars, a dentist from Miami, Florida, was quoted as saying, "There has been many, many claims about the benefits of charcoal toothpaste, but nothing has been substantiated with good science." He went on: "The claims vary from it will whiten your teeth to it will

---

[37] "What Dentists Want You to Know About Those Charcoal Toothpastes That Promise Whiter Teeth," available at Is Charcoal Toothpaste Safe? | POPSUGAR Fitness (accessed 5/20/2022).
[38] https://www.salon.com/2020/02/09/why-the-charcoal-toothpaste-trend-needs-to-die (accessed /5/20/22).

detoxify your body. Once again, where is the science? No toothpaste has been shown to truly whiten teeth like tooth whitening or bleaching." Continuing further, he said: "Toothpaste does not stay on your teeth for a substantial period of time to have any long-term effect such as whitening …."

### Men's Health, "What Those Trendy Charcoal Toothpastes Really Do to Your Teeth"

85. A Men's Health article dated July 21, 2020, relied on the recommendations of the ADA and the findings of Brooks *et al.* (2017), Greenwall *et al.* (2019) and Pertiwi *et al.* (2017) to conclude that "there's not enough evidence to prove that [charcoal toothpaste] can whiten your smile while keeping your teeth healthy."[39]

### Consumer Reports, "Ingredient Investigator: Charcoal in Toothpaste"

86. In September 2022, Consumer Reports published a report on Charcoal in Toothpaste.[40]

87. The article quoted a professor of dentistry, who debunked the claims for charcoal toothpaste:

> "People want to believe that it's a great alternative to toothpaste," says Edmond R. Hewlett, DDS, consumer adviser for the American Dental Association and a professor at the UCLA School of Dentistry in Los Angeles. Unfortunately, however, "there's no compelling evidence at all of any advantage of using charcoal toothpaste," Hewlett says.

*Id.*

88. The article also quoted an expert who said that, in the short term, charcoal toothpaste can make teeth look worse:

> In any case, in the short term, charcoal toothpastes may make teeth look worse, not better.

---

[39] "What Those Trendy Charcoal Toothpastes Really Do to Your Teeth," https://www.menshealth.com/health/a19537464/activated-charcoal-toothpaste/ (accessed 6/24/2022).
[40] Catherine Roberts, *Ingredient Investigator: Charcoal in Toothpaste*, available at https://www.consumerreports.org/health/dental-oral-care/does-charcoal-toothpaste-work-a7477277301/#:~:text=A%202019%20Brazilian%20study%2C%20on,teeth%20look%20worse%2C%20not%20better. (accessed 4/12/2023).

> "The charcoal stains the plaque green, and so a lot of effort is required to brush this off the teeth," says Linda Greenwall, BDS, a dentist and specialist in prosthodontics and restorative dentistry in London, and one of the authors of the British Dental Journal paper.

*Id.*

89. Regarding the potential harm from charcoal toothpastes, the article cited advice from Dr Hewlett to avoid charcoal toothpastes because of the risk of harm:

> With charcoal toothpastes, it's probably better to avoid the risk of using a product that is potentially too abrasive, Hewlett says.
>
> "If we're not sure, and if there is some evidence that the abrasivity is a concern, then that should be cause for caution right there," he says.

*Id.*

**No health-based website quotes an expert stating that charcoal toothpastes are effective and safe**

90. On information and belief, no health-based website quotes an expert stating that toothpastes are effective and safe tooth-whiteners. That information and belief is based on the fact that an extensive search by Plaintiff turned up no health-based website quoting an expert stating that charcoal toothpastes are effective and safe as tooth-whiteners.

**Burt's Bees knew and/or should have known of the scientific literature and evidence showing that charcoal toothpaste is ineffective and potentially harmful to teeth.**

91. Burt's Bees knew, and/or should have known, that not only was there no scientific support for the safety and efficacy of charcoal toothpaste products, but, as set forth above, scientific studies and literature showed charcoal toothpastes to be ineffective and/or potentially harmful as early as 2017.

92. Burt's Bees need not even have been tracking scientific or academic resources to know of these concerns relating to charcoal toothpaste, given that, as set forth above, numerous mainstream publications and media outlets reported on such concerns since at least 2017.

93. Burt's Bees also knew, and/or should have known, of the above statements and concerns raised by the ADA related to charcoal toothpaste products.

94. It is implausible and inconceivable that in the development, marketing, and sale of the Class Products, Burt's Bees was unaware of the scientific literature, media coverage (including analysis by numerous dental professionals), and the ADA's statements, all raising serious concerns related to the safety and efficacy of charcoal toothpastes.

95. Moreover, Burt's Bees indisputably knew the significance of the fact that the Class Products lacked the ADA's Seal of Acceptance, given that it sells other toothpaste products with the Seal.

**Burt's Bee's omitted material information and intended to mislead consumers.**

96. Burt's Bees' portrayal of the Class Products as natural, safe, and effective is unfair, deceptive, and/or misleading because there are serious risks associated with the use of charcoal toothpaste, including enamel abrasion, increased surface roughness of teeth which can lead to caries, and exposed dentin that results in teeth having a darker and more yellow appearance.

97. Burt's Bees' portrayal of the Class Products as providing benefits of whitening from charcoal is unfair, deceptive, and/or misleading because continued use of charcoal can result in teeth having a darker and more yellow appearance.

98. Burt's Bees also omits material information. It fails to tell consumers that, based on many studies regarding safety and effectiveness of charcoal toothpastes, scientific literature shows serious risks associated with the use of charcoal toothpaste, including enamel abrasion, increased surface roughness of teeth which can lead to caries, and exposed dentin that results in teeth having a darker and more yellow appearance.

99. Burt's Bees' portrayal of the Class Products as natural, safe, and effective is unfair, deceptive, and/or misleading because a reasonable consumer like Plaintiff would expect the

Class Products to be safe and effective, not shown in scientific literature to be ineffective and potentially harmful to the well-being of their teeth.

100.    Reasonable consumers cannot be expected to know that a toothpaste portraying itself as natural, safe, and effective is unproven and contrary to its stated efficacy and may cause harmful effects.

101.    In omitting that not only are charcoal toothpaste products entirely unproven in terms of safety and efficacy, but they have been shown to be ineffective whitening products and to cause harmful effects such as enamel abrasion, increased surface roughness that can lead to caries, and darker and yellower teeth, Burt's Bees omitted material facts. Reasonable consumers would act differently knowing this information and/or would be expected to rely on this information in making their purchasing decisions.

102.    Burt's Bees' omissions constituted a failure to disclose material facts that were known to it, or that, upon reasonable inquiry, would be known to it.

103.    By portraying the Class Products as natural, safe, and effective whitening toothpaste products, Burt's Bees intended that consumers would rely on this unfair, deceptive, and/or misleading portrayal that is not supported by, and is in fact contradicted by, scientific literature relating to charcoal toothpaste.

104.    The sale of Burt's Bees' Class Products is especially egregious when considered in the context of other toothpastes in the marketplace (including those manufactured, marketed, and sold by Burt's Bees itself) that have the ADA's Seal of Acceptance and are scientifically proven to be safe and effective toothpaste products without causing adverse effects.

**Burt's Bees' acts violate established ethical standards.**

105.    Defendant's practices violate generally accepted ethical principles of business conduct.

24

106. The basis for the allegation that it is unethical to engage in the above practices comes, in part, from established ethical principles recognized by the American Marketing Association, "the leading organization for marketers [and] the trusted go-to resource for marketers and academics."[41]

107. The American Marketing Association ("AMA") "commits itself to promoting the highest standard of professional ethical norms and values . . . ." Exhibit A. As such, it has published its "Statement of Ethics." *Id.* AMA states that "marketers are expected to embrace the highest professional ethical norms and the ethical values implied by our responsibility toward multiple stakeholders (e.g., customers . . . )." *Id.* Thus, the Statement of Ethics contains "Ethical Values," which represent what is "morally proper." *Id.*

108. AMA states that marketers' Ethical Values include "Transparency," which includes "[s]triv[ing] to communicate clearly with all constituencies" and "[e]*xplaining* and tak[ing] appropriate action *regarding significant product* or service *risks* . . . ." *Id.* (emphasis added).

109. By misrepresenting the benefits of its products and by not explaining the risks of using its products, Defendant violated these Ethical Values, because, among other reasons, it did not communicate clearly and did not explain its products' risks, especially the risk that its products might damage tooth enamel, darken teeth, and lead to caries.

**Plaintiff's Purchases**

110. Plaintiff has regularly purchased the Class Products during the Class Period from Walmart in Granite City, including most recently in or about January 2022.

111. Prior to making her purchases, Plaintiff was exposed to and read the label for the Class Products.

---

[41] https://www.crunchbase.com/organization/american-marketing-association#section-overview (accessed 1/21/2021).

112. At all times, Plaintiff believed and had a reasonable expectation that the labeling portraying the Class Products as natural, safe, and effective whitening toothpaste products was truthful and accurate.

113. Plaintiff had a reasonable expectation that the Class Products were safe and effective, not that they would not whiten and were shown in scientific literature to be ineffective and potentially harmful to the well-being of their teeth.

114. Plaintiff cannot be expected to know that a toothpaste portraying itself as natural, safe, and effective is unproven or contrary to its stated efficacy and may cause harmful effects.

115. Had Plaintiff known the truth about the safety and effectiveness of the Class Products, she would have either not purchased them or paid less for them.

116. As a direct result of Burt's Bees' misleading labeling and omissions, Plaintiff and other members of the Class have been deprived of the benefit of their bargain in purchasing these products because the products had less value than represented.

117. Consequently, Plaintiff and members of the Class have suffered injury and lost money and property in purchasing the products listed above.

## V.  CLASS ALLEGATIONS

118. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of herself and as a representative of all others who are similarly situated. Plaintiff seeks certification of the following class:

> All persons in the state of Illinois who purchased one or more of the Class Products in Illinois during the Class Period.

119. Excluded from the Class are any employees of Burt's Bees, as well as the officers, directors, affiliates, legal representatives, predecessors, successors, and assigns of Burt's Bees.

Also excluded are the judges and court personnel in this case and any members of their immediate families.

120. Plaintiff reserves the right to amend or modify the Class definitions with greater specificity or division into subclasses after having had an opportunity to conduct discovery.

121. The Class Period is that period within the statute of limitations for this action and extending until a Class is certified herein.

122. The Class is certifiable under Rule 23.

123. **Numerosity.** Rule 23(a)(1). The members of the Class are so numerous that joinder of all members is impractical.

124. **Commonality and Predominance.** Rule 23(a)(2) and Rule 23(b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting individual members of the Class. These common questions of law and fact include, without limitation:

   a. Whether Defendant's portrayal of the Class Products as safe, natural, and effective whitening toothpaste products was false or misleading;

   b. Whether Defendant omitted material information relating to the safety and effectiveness of the Class Products;

   c. Whether Defendant's portrayal of the Class Products as safe, natural, and effective whitening toothpaste products was likely to mislead a reasonable consumer;

   d. Whether Defendant engaged in unfair acts or practices in the conduct of trade or commerce;

   e. Whether Defendant engaged in deceptive acts or practices in the conduct of trade or commerce;

   f. Whether Defendant has been unjustly enriched by its retention of profits from the sale of the Class Products that it advertised, marketed, and sold;

   g. Whether Plaintiff and the members of the Class are entitled to an award of compensatory damages and/or restitution and/or disgorgement; and

h.  Whether Plaintiff and the Class are entitled to an award of punitive damages as permitted by the Illinois Consumer Fraud and Deceptive Business Practices Act.

125. **Typicality.** Rule 23(a)(3). The claims of Plaintiffs are typical of the claims of the class in that all class members, including Plaintiff, have the same claims that they were misled and injured by Defendant's violations of ICFA by engaging in deceptive and unfair practices in selling the Class Products.

126. **Adequacy.** Rule 23(a)(4). Plaintiff is a member of the Class she seeks to represent, is committed to the vigorous prosecution of this action, and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

127. **Superiority.** Rule 23(b)(3). A class action is superior to other methods for the fair and efficient adjudication of the controversy. Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, Class members will continue to suffer losses and Defendant's misconduct will proceed without remedy. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard that might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court. Finally, Plaintiff knows of no difficulty

28

that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

128. **Class Action on Particular Issues.** Rule 23(c)(4). Because there are common individual issues among the Class, it is appropriate for this action to be maintained as a class action with respect to particular issues if necessary.

### COUNT I
### <u>Violation of ICFA By Means of Unfair Business Practices</u>

129. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

130. This Count relates to the ICFA's prohibition of unfair acts or practices.

131. Each Class Product is "merchandise" pursuant to 815 ILCS § 505/1(b).

132. The advertising, offering for sale, sale, and/or distribution of the Class Products constitutes "trade" or "commerce" pursuant to 815 ILCS § 505/1(f).

133. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

134. The above section incorporates the interpretations of the United States Federal Trade Commission ("FTC") of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). Section 2 of the ICFA provides: "In construing this section consideration shall be given to the

interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act." 815 ILCS § 505/2.

135. Section 5(a) of the FTC Act outlaws "unfair … acts or practices in or affecting commerce . . . ."

136. In interpreting the prohibition of unfair practices in § 5(a) of the FTC Act, the FTC applies a three-part test under which "an act or practice is 'unfair' if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.' 15 U.S.C. Sec. 45(n)." *See* FTC, A Brief Overview of the Federal Trade Commission's Investigative, Law Enforcement, and Rulemaking Authority (Revised, May 2021) ("FTC Overview").[42]

137. The source of that statement is the FTC's Policy Statement on Unfairness, which embodies the policy of the FTC. *See* https://www.ftc.gov/legal-library/browse/ftc-policy-statement-unfairness (accessed 4/12/2023).

138. As the FTC notes, that three-part test was embodied in 45 U.S.C. § 45(n). *See* FTC Overview.

139. Burt's Bees' practice alleged herein violates each of the three elements of the FTC's unfairness standard as quoted above. In the aggregate, it causes substantial injury to consumers who buy toothpaste that is ineffective at whitening and unsafe. The injury is not reasonably avoidable by consumers because the typical consumer has no way of knowing that Burt's Bees charcoal toothpaste is ineffective at whitening and bears risk of damage to his or her teeth. Nor are there countervailing benefits to consumers or competition. The last statement is based on the literature and expert opinions described above.

---

[42] Available at https://www.ftc.gov/about-ftc/mission/enforcement-authority (accessed 4/12/2023).

140. In addition, unethical practices violate the ICFA as unfair acts or practices. According to the Illinois Supreme court, unfair business practices in violation of the ICFA are those that: (a) offend public policy; (b) are immoral, unethical, oppressive, or unscrupulous; and/or (c) cause substantial injury to consumers. *See Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417, 775 N.E.2d 951, 961 (2002).

141. Moreover, the FTC and federal courts consider immoral or unethical conduct to be unfair in violation of Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). *See F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244, n. 5 (1972); *Spiegel, Inc. v. F.T.C.*, 540 F.2d 287, 293 (7th Cir. 1976). Therefore, they are unfair in violation of ICFA.

142. Accordingly, pursuant to ICFA, Defendant has a duty not to engage in any immoral, unethical or unfair practice in connection with the sale or advertisement of any merchandise in trade or commerce. For the reasons stated herein, it breached that duty.

143. As set forth above, Burt's Bees sold and sells the Class Products without explanation of the serious risks associated with the use of charcoal toothpaste and thereby acted unfairly and unethically in violation of ethical standards including those recognized by the American Marketing Association.

144. Specifically, as set forth above, Burt's Bees sold the Class Products under the representations that they provided benefits of tooth whitening even though continued use of charcoal toothpaste can result in teeth having a darker and more yellow appearance and risks damage to tooth enamel. Burt's Bees acted unethically and unfairly in failing to disclose those risks.

145. Selling charcoal toothpaste products where there not only is no evidence to substantiate the safety or effectiveness thereof, but where there is evidence showing charcoal toothpaste

products to be ineffective and unsafe, without disclosing any of this to Class Members, is unfair and violates generally accepted principles of ethical business conduct as set forth above.

146. The acts and practices engaged in by Burt's Bees, as set forth herein, constitute unfair business practices in violation of 815 ILCS § 505/1 et seq. because they: (a) offend public policy; (b) are immoral, unethical, oppressive, or unscrupulous; and/or (c) cause substantial injury to consumers.

147. Burt's Bees intended that Plaintiff and the Class rely on the aforesaid unfair acts and practices.

148. Burt's Bees' conduct as set forth herein involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.

149. As a direct and proximate result of the aforesaid violations of ICFA, Plaintiff and the Class have suffered an ascertainable loss of money in that they overpaid for the Class Products because they paid a price for safe and effective charcoal toothpaste products that was based on Defendant's unfair practices, as set forth herein. Thus Plaintiff and the Class paid more than the actual value for the Class Products and received products that are worth a lesser value, if they have any value at all.

150. Burt's Bees' acts and practices alleged herein have directly, foreseeably, and proximately caused loss, damages, and injury to Plaintiff and the Class in an amount to be determined at trial.

151. Burt's Bees' conduct as aforesaid was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and others similarly situated and, therefore, warrants the imposition of punitive damages.

152. Plaintiff has been forced to hire attorneys to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT II
### <u>Violation of ICFA By Means of Deceptive Acts or Practices</u>

153. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

154. Each Class Product is "merchandise" pursuant to 815 ILCS § 505/1(b).

155. The advertising, offering for sale, sale, and/or distribution of the Class Products constitutes "trade" or "commerce" pursuant to 815 ILCS § 505/1(f).

156. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, "the use or employment of any deception, fraud, false pretense, false promise, [or] misrepresentation . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

157. This Count relates to Defendant's violation of ICFA's prohibition of deceptive acts or practices.

158. As set forth herein, Burt's Bees sold the Class Products under the false pretense, false promise, and/or misrepresentation that they provided benefits of "whitening" and would "restore teeth to their natural whiteness" when continued use of charcoal can result in teeth having a darker and more yellow appearance.

159. Specifically, Burt's Bees states and stated on the packages of each of its Class Products, "Charcoal + Whitening" and additionally states and stated, "This toothpaste, crafted with charcoal, removes surface stains to help restore teeth to their natural whiteness . . . ."

160. Defendant's false statements and misrepresentations described herein constitute deception, fraud, false pretense, false promise, or misrepresentation in connection with the sale of merchandise in Illinois.

161. The acts and practices engaged in by Defendant, as set forth herein, constitute deceptive and/or fraudulent business practices in violation of 815 ILCS § 505/1 *et seq*.

162. The aforesaid fraudulent and deceptive acts and practices occurred in the course of conduct involving trade or commerce.

163. Defendant intended that Plaintiff and the Class rely on the aforesaid deceptive advertising, acts and practices.

164. Section 2 of ICFA further prohibits "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act[.]" 815 ILCS § 505/2.

165. As set forth above, Burt's Bees engaged in, *inter alia*, the following deceptive trade practices described in Section 2 of the Uniform Deceptive Trade Practices Act in transactions with Plaintiff and the Class in Illinois which were intended to result in, and did result in, the sale of the Class Products:

> a. Representing that the Class Products have characteristics, uses, and/or benefits that they do not have.
>
> b. Representing that the Class Products are of a particular standard, quality, or grade when they are of another.

166. As a direct and proximate result of the aforesaid violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Class have suffered an ascertainable loss of money and/or property in that they overpaid for the Class Products because they paid a price that was based on Defendant's material misrepresentations regarding the efficacy of the Class Products, in an amount to be proved at trial.

167. Defendant continues to market, advertise, and sell the Class Products by falsely and deceptively portraying them as effective whitening toothpaste products.

168. Defendant's conduct as aforesaid was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and others similarly situated and, therefore, warrants the imposition of punitive damages.

169. Plaintiff has been forced to hire attorneys to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

**COUNT III**
**Violation of ICFA By Means of Concealment, Suppression or Omission of Material Fact**

170. Plaintiff hereby incorporates and adopts by reference each and every allegation set forth above.

171. Each Class Product is "merchandise" pursuant to 815 ILCS § 505/1(b).

172. The advertising, offering for sale, sale, and/or distribution of the Class Products constitutes "trade" or "commerce" pursuant to 815 ILCS § 505/1(f).

173. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS § 505/2, prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby."

35

174. This Count relates to Defendant's violation of ICFA's prohibition of the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact.

175. Burt's Bees omitted material facts by not disclosing to Plaintiff and the Class prior to their purchases that evidence not only fails to support charcoal toothpaste as a safe and effective whitening toothpaste product but, *inter alia*, that charcoal toothpaste has a risk of causing damage to teeth in that it has been shown to abrade enamel, increase the tooth's surface roughness which can lead to harmful caries, and make teeth more yellow by exposing the dentin.

176. The above stated facts are facts that a reasonable consumer would likely consider to be important in making a purchasing decision, or the concealment of which would be likely to induce a person to manifest his/her assent, or that the seller knows would be likely to induce a particular consumer to manifest his/her assent, or that would be likely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

177. Section 2 of ICFA further prohibits "the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act[.]" 815 ILCS § 505/2.

178. As set forth above, Burt's Bees engaged in, *inter alia*, the following unlawful trade practices described in Section 2 of the Uniform Deceptive Trade Practices Act in transactions with Plaintiff and the Class in Illinois which were intended to result in, and did result in, the sale of the Class Products: Concealing, omitting, and/or suppressing material facts regarding the Class Products so as to create a likelihood of confusion or misunderstanding.

179. The aforesaid acts and practices by means of omissions occurred in the course of conduct involving trade or commerce.

180. Defendant intended that others rely upon the concealment, suppression or omission of the above material facts.

36

181. Burt's Bees' omission of the above stated facts constituted a failure to disclose material facts that were known to it, or that, upon reasonable inquiry, would be known to it.

182. Defendant's omission described herein constitute concealment, suppression or omission of material facts in connection with the sale of merchandise in Illinois.

183. The acts and practices engaged in by Defendant, as set forth herein, constitute business practices that violate of 815 ILCS § 505/1 *et seq.*

184. The aforesaid unlawful acts and practices occurred in the course of conduct involving trade or commerce.

185. As a direct and proximate result of the aforesaid violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and the Class have suffered an ascertainable loss of money and/or property in that they overpaid for the Class Products because they paid a price that was based on Defendant's material concealments regarding the safety and efficacy of the Class Products, in an amount to be proved at trial.

186. Defendant's conduct as aforesaid was and continues to be wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and others similarly situated and, therefore, warrants the imposition of punitive damages.

187. Plaintiff has been forced to hire attorneys to enforce her rights under the Illinois Consumer Fraud and Deceptive Business Practices Act.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## COUNT IV
## <u>Unjust Enrichment</u>

188. Plaintiff hereby incorporates and adopts by reference the allegations set forth in paragraphs 1-117 of this Complaint, and to the extent necessary, pleads this Count in the alternative.

189. Plaintiff and the Class members conferred a monetary benefit on Defendant when they paid for the Class Products.

190. As set forth above, Defendant knowingly misrepresented and concealed material facts in connection with its marketing, advertising, and sales of the Class Products.

191. Defendant has retained Plaintiff's and the Class members' purchase price despite their knowing misrepresentations and concealments regarding the Class Products.

192. As a result, Defendant is unjustly enriched at the expense of Plaintiff and the Class.

193. Under principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Plaintiff and the Class that Defendant gained through unfair, deceptive, and/or fraudulent material misrepresentations and omissions in the marketing, advertising, and selling of the Class Products.

194. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members overpaid for the Class Products because they paid a price that was based on Defendant's material misrepresentations and concealments regarding the safety and efficacy of the Class Products.

195. Accordingly, Plaintiff and the Class seek full disgorgement and restitution of the amounts Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein, an amount which will be proved at trial.

WHEREFORE, Plaintiff and the Class pray for the relief requested in the Prayer for Relief set forth below.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks the following relief:

A.    certification of the Class pursuant to Fed R. Civ. P. 23;

B.    awarding Plaintiff and the Class compensatory damages, in an amount to be proved at trial;

C.    awarding Plaintiff and the Class full disgorgement and restitution of the amounts Defendant has retained as a result of the unlawful and/or wrongful conduct alleged herein, in an amount to be proved at trial;

D.    awarding punitive damages for Plaintiff and the Class under the Illinois Consumer Fraud and Deceptive Business Practices Act in an amount to punish Defendant's egregious conduct as set forth above and to deter Defendant and others from engaging in similar conduct;

E.    awarding attorneys' fees and costs; and

F.    providing such further relief as may be just and proper.

## VII.    JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 14, 2023                    Respectfully submitted,

**GOLDENBERG HELLER & ANTOGNOLI, P.C.**

By:   _/s/ Kevin P. Green_
        Thomas P. Rosenfeld #06301406
        Kevin P. Green #06299905
        Thomas C. Horscroft #06327049
        Richard S. Cornfeld #0519391
        Daniel S. Levy #06315524
        2227 South State Route 157
        Edwardsville, IL 62025
        618-656-5150
        tom@ghalaw.com
        kevin@ghalaw.com

39

thorscroft@ghalaw.com
rick@ghalaw.com
daniel@ghalaw.com

***Attorneys for Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2023, the foregoing was filed with the Court Clerk via the Court's electronic filing system and served on upon all counsel of record via the Court's electronic notification system.

  */s/ Kevin P. Green*